18-CV-12198 (VEC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN PINCKNEY,

                                     Plaintiff,

- against -

LOUISE CARROLL, as Commissioner of the New York City Department of Housing Preservation and Development, THE NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, and THE CITY OF NEW YORK,

                                     Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Jasmine Paul*
*Tel: (212) 356-2192*
*Matter No.: 2019-006601*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………………..ii

PRELIMINARY STATMENT……………………………………………………………………1

FACTUAL SUMMARY …………………………………………………………………………2

ARGUMENT……………………………………………………………………………………..4

PLAINTIFF'S FEDERAL CLAIMS……………………………………………………………...6

    I. Plaintiff's Americans with Disabilities Act and Rehabilitation Act Claims Fail……………………………………………………………………………………….6

    II. Plaintiff's Title VIII of the Civil Rights Act of 1968 Claim Fails……………………………………………………………………………………….9

PLAINTIFF'S STATE CLAIMS………………………………………………………………..10

    I. Plaintiff's New York State Human Rights Law Claim Fails……………………………………………………………………………………...11

    II. Plaintiff's New York City Human Rights Law Claim Fails…………………………..11

    III. Plaintiff is Not Entitled to Damages Based on Emotional Distress ………………………………………………………………………………………….12

CONCLUSION…………………………………………………………………………………14

## TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) .................................................................................5

Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) ...........................................4

Batista v. City of New York, 2007 U.S. Dist. LEXIS 71905, 26 (S.D.N.Y. 2007) .......................12

Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007) ....................................................................5

Birch v. Pioneer Credit Recovery, Inc., 2007 U.S. Dist. LEXIS 41834, *16 (W.D.N.Y. Jun. 8, 2007) ...........................................................................................................................................10

Cave v. E. Meadow Union Free Sch. Dist., 480 F. Supp. 2d 610, 639 (E.D.N.Y. 2007) ..............7

Chambers v. Time Warner, 282 F.3d 147, 152-53 (2d Cir. 2002) .................................................6

City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) ...........................................................5

Corley v. Spitzer, 2015 U.S. Dist. LEXIS 2022, 22 (S.D.N.Y. 2015). .........................................13

Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir. 1991) ........................................6

D'Angelo-Fenton v. Town of Carmel Police Dep't., 470 F. Supp. 2d 387 (S.D.N.Y. 2007) ...................................................................................................................................................12, 13

Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006) .........................................11

Innovative Health Sys. v. City of White Plains, 177 F.3d 37, 47 (2d Cir. 1997) ..........................7

Joglo Realties, Inc. v. Seggos, 229 F. Supp. 3d 146, 148 n.3 (E.D.N.Y. 2017) ............................6

Klein & Co. Futures Inc. v. Bd. of Trade of New York City, 464 F.3d 255, 262 (2d Cir. 2006) ...................................................................................................................................................10

Lowell v. Lyft, Inc., 352 F. Supp. 3d 248, 253 (S.D.N.Y. 2018) ...............................................4, 5

Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) .............................................................10

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ...................................6

Morse v. JetBlue Airways Corp., 941 F. Supp. 2d 274, 292 (E.D.N.Y. 2013) ............................11

Murphy v. American Home Products Corp., 58 N.Y. 2d 293, 303 (1983) .................................12

Mutlu v. JetBlue Airways Corp., 2009 U.S. Dist. LEXIS 60164 (S.D.N.Y. 2009) ...................... 13

Nike, Inc. v. Already LLC, 663 F.3d 89, 94 (2d Cir. 2011). ............................................................ 4

Noonan v. City of New York, 2015 U.S. Dist. LEXIS 83451 (S.D.N.Y. 2015) ............................ 12

Palmer v. Mae, 2018 U.S. App. LEXIS 31479, 3 (2d Cir. 2018) ..................................................... 9

Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir. 2000) ................................. 11

Picaro v. Pelham 1130 LLC, 2016 U.S. Dist. LEXIS 46580, 31-32 (S.D.N.Y 2016) ..................... 9

Plumely v. Landmark Chevrolet, 122 F.3d 308, 312 (5th Cir. 1997) .............................................. 7

Rivera v. City of New York, 392 F. Supp. 2d 644 (S.D.N.Y. 2005) .............................................. 12

Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999) ................................................. 7

Saldana v. Port Chester, 2010 U.S. Dist. LEXIS 142099 (S.D.N.Y. 2010) ................................... 12

Sazerac Co. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ......................................................... 6

Stauber v. City of New York, 2004 U.S. Dist. LEXIS 13350, 33 (S.D.N.Y. 2004) ..................... 5,7

Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) ............................................................... 4

Tsombanidis v. W. Haven Fire Dep't, 352 F. 3d 565 (2d Cir. 2003) ............................................... 9

Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 146 n.6 (2d Cir. 2002) .......................... 7

Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) .......................................... 6

Wiltz v. New York Univ., 2019 U.S. Lexis 17711, 19
    (S.D.N.Y 2019). ....................................................................................................................... 4,6

**Statutes**

Fair Housing Act of 1968 .............................................................................................................. 10

New York City Human Rights Law .............................................................................................. 12

New York State Human Rights Law ............................................................................................. 12

Section 504 of the Rehabilitation Act of 1973 ................................................................................ 8

Title 28 U.S.C. § 1367 ................................................................................................................... 11

Title II of the Americans with Disabilities Act ........................................................................7, 8

**Federal Rules of Civil Procedure**

Rule 12(b)(6) ............................................................................................................................6, 7

**Constitutional Provisions**

Article III of the Constitution ............................................................................................6, 8, 13

Defendants, Louise Carroll, as Commissioner of the New York City Department of Housing Preservation and Development, the New York City Department of Housing Preservation and Development ("HPD"), and the City of New York (the "City") (collectively "defendants"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, submit this memorandum of law in support of their Motion to Dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

On January 17, 2017, HPD informed Laurette Pinckney, the late mother of Plaintiff, that her Section 8 Housing Choice Voucher would be terminated at the end of February 2017 because she failed to timely provide necessary documents to complete the recertification process. HPD also informed Ms. Pinckney that she could submit a request for an informal hearing to challenge the termination no later than thirty days from the termination notice, i.e., by February 17, 2017. However, Ms. Pinckney did not submit a timely request and instead submitted a late request for an informal hearing. Moreover, Ms. Pinckney failed to provide a reason for her late request nor did she request a reasonable accommodation due to her health issues through the established HPD procedure. Therefore, HPD denied her request and terminated Ms. Pinckney's Section 8 Housing Choice Voucher. Ms. Pinckney passed away in June 2018. Plaintiff brings the instant action seeking a judgment declaring that Defendants discriminated against Ms. Pinckney on the basis of her disability, to make changes to HPD's policies, practices and procedures, and for a judgment awarding Plaintiff damages, fees, and costs.

However, Plaintiff lacks standing to bring the instant action as any claims regarding the termination of Ms. Pinckney's Section 8 Housing Choice Voucher did not survive her death. Plaintiff alleges that HPD violated Ms. Pinckney's rights under the Americans with

1

Disabilities Act and Rehabilitation Act by terminating her Section 8 Housing Choice Voucher. However, there is no present or future risk of harm to Ms. Pinckney or to Plaintiff based on his association to Ms. Pinckney. Therefore, Plaintiff's claims under the Americans with Disabilities Act and Rehabilitation Act fail.

Further, the SAC fails to state a claim as it does not sufficiently plead that by terminating Ms. Pinckney's Section 8 Housing Choice Voucher, HPD discriminated against Ms. Pinckney because she was disabled. Plaintiff alleges that HPD should have known that Ms. Pinckney was disabled and provided her with a reasonable accommodation. However, Plaintiff fails to allege that Ms. Pinckney requested a reasonable accommodation through HPD's established procedures. For a plaintiff to allege that HPD failed to provide a reasonable accommodation, the plaintiff must first request the reasonable accommodation. Here, Ms. Pinckney never requested a reasonable accommodation. Therefore, the SAC fails to sufficiently plead that Ms. Pinckney was excluded from participation in the Section 8 program or that HPD otherwise discriminated against her because she was disabled. For this reason, the SAC fails to state a claim upon which relief can be granted.

Plaintiff now alleges that he is disabled and may in the future be injured by HPD practice or policy. However, Plaintiff fails to allege that he has suffered any injury. Moreover, Plaintiff's claims are hypothetical and conjectural and should be dismissed as well.

## FACTUAL SUMMARY

In 2008, Plaintiff's late mother, Laurette Pinckney was issued a Section 8 Housing Choice Voucher by HPD. See SAC ¶ 6. By Termination of Subsidy Notice dated January 17, 2017, HPD informed Laurette Pinckney that her Section 8 subsidy would be terminated at the end of February 2017 because she failed to provide necessary documents to complete the annual recertification process. See SAC ¶ 76-77. The notice further informed Ms.

2

Pinckney that she had thirty days from the date on the notice to request an informal hearing to challenge the termination of her Section 8 subsidy. See SAC ¶ 77.

At the end of February 2017, Laurette Pinckney came to the HPD office and submitted a request for an informal hearing to challenge the termination of her Section 8 subsidy. See SAC ¶ 81. Plaintiff does not allege that Ms. Pinckney requested a reasonable accommodation because of her alleged disability during her visit to the HPD office or that in her request for an informal hearing she requested a reasonable accommodation. HPD then denied Ms. Pinckney's request for an informal hearing as untimely as her request should have been submitted by February 17, 2017. See SAC ¶¶ 84. On June 13, 2018, Ms. Pinckney passed away. See SAC ¶ 94.

By electronic mail dated August 27, 2018, Plaintiff's counsel contacted Evelyn Ruiz, an Executive Program Director at HPD, and requested that Laurette Pinckney's Section 8 Housing Choice Voucher be restored and that Plaintiff be made head of household. See SAC ¶ 98. On August 27, 2018, Ms. Ruiz responded to this email and stated that HPD would not reinstate Laurette Pinckney's Section 8 Housing Choice Voucher as she is now deceased. See SAC ¶ 99.

By electronic mail dated March 7, 2019, Ms. Ruiz informed Plaintiff's attorney that HPD was willing to reinstate Ms. Pinckney's Section 8 Housing Choice Voucher, transfer this voucher to Plaintiff, and provide retroactive housing assistance payments from March 1, 2017 to the present. See SAC ¶ 105.

In April 2019, HPD transferred Ms. Pinckney's Section 8 Housing Choice Voucher to Plaintiff. See SAC ¶ 106. On April 25, 2019, the City made retroactive housing

assistance payments from March 1, 2017 to the present to Plaintiff's landlord. See Declaration of Leslie Kahn.[1]

## ARGUMENT

Standing is a threshold matter central to federal subject matter jurisdiction. The Court must assure itself that the constitutional standing requirements are satisfied before proceeding to the merits. Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007). When a court lacks the statutory or constitutional power to adjudicate a case, it should dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1). Lowell v. Lyft, Inc., 352 F. Supp. 3d 248, 253 (S.D.N.Y. 2018); Nike, Inc. v. Already LLC, 663 F.3d 89, 94 (2d Cir. 2011). The party invoking federal jurisdiction "bears the burden of showing that [the party] has standing for each type of relief sought." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). Where jurisdictional facts are in dispute the Court has the obligation to decide issues of fact by looking to evidence outside the pleadings. Wiltz v. New York Univ., 2019 U.S. Lexis 17711, 19 (S.D.N.Y 2019).

A plaintiff has standing when he has suffered "(1) injury that is (2) fairly traceable to a defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." Lowell, 352 F. Supp. 3d at 254; Allen v. Wright, 468 U.S. 737, 751 (1984). "[A]n injury must be an injury in fact, meaning an invasion of a legally protected interest which is (a) concrete and particularized…and (b) actual or imminent, not conjectural or hypothetical." Lowell, 352 F. Supp. 3d at 254. To demonstrate standing to pursue injunctive relief, a plaintiff must show that "he sustained or is immediately in danger of sustaining some direct injury as the

---

[1] To the extent Plaintiff seeks actual and compensatory damages. HPD has already made retroactive payments to Plaintiff's landlord. Therefore, Plaintiff is not entitled actual or compensatory damages.

result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Stauber v. City of New York, 2004 U.S. Dist. LEXIS 13350, 33 (S.D.N.Y. 2004), City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). To establish standing to seek injunctive relief, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." Stauber, 2004 U.S. Dist. LEXIS 13350, at 35-36.

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, so as to make a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a pleading must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard requires a court to reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," and requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

In assessing a motion to dismiss under Rule 12(b)(6), a court may look to the facts alleged in the complaint, documents attached thereto or incorporated by reference, documents that are "integral" to a plaintiff's claims, even if not expressly incorporated by reference, as well as matters of public record, documents in plaintiff's possession, or documents that the plaintiff knew of or relied upon in bringing suit. Chambers v. Time Warner, 282 F.3d 147, 152-53 (2d Cir. 2002); Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir. 1991); Joglo Realties, Inc. v. Seggos, 229 F. Supp. 3d 146, 148, n.3 (E.D.N.Y. 2017). Moreover, "if the

5

allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." Sazerac Co. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994). Such contradicted allegations are "insufficient to defeat a motion to dismiss." Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008).

**PLAINTIFF'S FEDERAL CLAIMS**

**I.    Plaintiff's Americans with Disabilities Act and Rehabilitation Act Claims Fail**

To plead a violation under Title II of the Americans with Disabilities Act ("ADA"), a plaintiff must make out a prima facie case of disability discrimination and must show that "(1) [he] is a qualified individual with a disability [as defined by the ADA], (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; … (3) that such exclusion or discrimination was due to his disability," and that with or without a reasonable accommodation, he "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Wiltz, 2019 U.S. Lexis 17711 at 19-20.

To plead a violation under section 504 of the Rehabilitation Act of 1973, a plaintiff must show "(1) that he had a disability for the purposes of the Rehabilitation Act; (2) that he was otherwise qualified for the benefit that has been denied; (3) that he has been denied the benefits solely by reason of his disability; and (4) that the benefit is part of a program or activity receiving Federal financial assistance." Cave v. E. Meadow Union Free Sch. Dist., 480 F. Supp. 2d 610, 639 (E.D.N.Y. 2007). Since section 504 of the Rehabilitation Act and Title II of the ADA impose identical requirements, the Second Circuit has determined that these claims should be considered in tandem. Cave, 480 F. Supp 2d 610 at 640, Weixel v. Bd. of Educ. of the

City of N.Y., 287 F.3d 138, 146 n.6 (2d Cir. 2002); see also Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999).

Plaintiff's claims under the ADA and Rehabilitation Act rest on the alleged discrimination against his late mother, Laurette Pinckney. However, any claims Ms. Pinckney may have had for injunctive and declaratory relief under the ADA and Rehabilitation Act did not survive her death, and there is now no threat of imminent or future harm to her. See Stauber, 2004 U.S. Dist. LEXIS 13350 at 47-48; see also Plumely v. Landmark Chevrolet, 122 F.3d 308, 312 (5th Cir. 1997). As well, Plaintiff's claims under the ADA and Rehabilitation Act with regard to his association with Laurette Pinckney do not survive. Though a non-disabled plaintiff suing under Title II of the ADA and the Rehabilitation Act may be able to bring a suit for injury based on their association with a disabled person, they still must meet the requirements for standing under Article III of the Constitution. See Innovative Health Sys. v. City of White Plains, 177 F.3d 37, 47 (2d Cir. 1997). Article III of the Constitution requires that the Court be able to redress present and possible future harm, not past harm. As Ms. Pinckney is now deceased, there is no present or future threat of harm that Defendants can inflict on her. Therefore, Plaintiff is not at risk of present or future harm based on his association with Ms. Pinckney. Accordingly, Plaintiff has no standing to seek injunctive and declaratory relief based on his association with Ms. Pinckney under the ADA and the Rehabilitation Act.

Moreover, though Plaintiff now alleges that he is disabled as defined under the ADA, he does not claim that he has been discriminated against by HPD because of his disability or that he has been denied any benefit by HPD because of his disability. Plaintiff alleges that he may in the future suffer harm because he is disabled and may not be able to comply with HPD's rules and regulation regarding recertification. However, all of Plaintiff's claims are conjectural or

hypothetical. As Plaintiff has not suffered actual injury, he lacks standing to seek relief under the ADA or the Rehabilitation Act.

Further, the SAC has failed to sufficiently plead that Ms. Pinckney was excluded from participation in the Section 8 program or otherwise discriminated against by the Section 8 program because she was disabled. Plaintiff does not allege that Ms. Pinckney requested a reasonable accommodation using HPD's established procedures during her visits to HPD or that in her written request for an informal hearing that she requested a reasonable accommodation. Further, the SAC does not allege that in Ms. Pinckney's written request for an informal hearing she informed HPD that the reason she was unable to timely submit documentation was due to the fact that she was physically impaired. Plaintiff's conclusory assertion that HPD should have known that Ms. Pinckney was disabled because she stated she had a stroke or had been in the hospital is insufficient to show that HPD excluded her and that exclusion was because she was disabled. Plaintiff's arguments that a reasonable person should have known that she was disabled and needed a reasonable accommodation is speculative. Had Ms. Pinckney used the established procedure at HPD and requested a reasonable accommodation in writing that was denied, then Plaintiff may have been able to assert that Ms. Pinckney was denied a reasonable accommodation. However, since no reasonable accommodation was requested, the SAC fails to sufficiently plead that Defendants violated the ADA and Rehabilitation Act.

## II. Plaintiff's Title VIII of the Civil Rights Act of 1968 Claim Fails

The SAC fails to state a claim under the Fair Housing Act of 1968 ("FHA"). The FHA prohibits discrimination against a person with a handicap by refusing to make a reasonable accommodation. "[A] plaintiff can survive a motion to dismiss if the plaintiff can allege facts that support a plausible claim that the plaintiff was a member of a protected class, suffered

relevant adverse treatment, and can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." Palmer v. Mae, 2018 U.S. App. LEXIS 31479, 3 (2d Cir. 2018). In cases where a plaintiff alleges discrimination on the basis of a failure to provide a reasonable accommodation under the FHA and ADA, plaintiffs "must first provide the governmental entity an opportunity to accommodate them through the entity's established procedures used to adjust the neutral policy in question." This is because "[a] governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation." Picaro v. Pelham 1130 LLC, 2016 U.S. Dist. LEXIS 46580, 31-32 (S.D.N.Y 2016); see also Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565 (2d Cir. 2003).

The SAC fails to allege even minimal facts to suggest that HPD discriminated against Ms. Pinckney on the basis of her disability. The SAC does not allege that HPD refused to make a reasonable accommodation for Ms. Pinckney. Additionally, the SAC does not allege that Ms. Pinckney requested a reasonable accommodation through HPD's established procedure. As Ms. Pinckney never gave HPD the opportunity to reasonably accommodate her under its procedures, the SAC fails to state a claim under the FHA. The SAC simply makes conclusory and speculative allegations of discrimination. HPD's mere awareness that Ms. Pinckney had a stroke, had been in the hospital at some point in time, and the rejection of her request for an informal hearing, is insufficient to support Plaintiff's allegation of discrimination. Therefore, the SAC fails to state a claim under the FHA and it should be dismissed.

Although Plaintiff now alleges that he is a handicapped person as defined under the FHA, he does not claim that he has been discriminated against by HPD because of his handicap or that he has been denied any benefit by HPD because of his handicap. Plaintiff

alleges that he may in the future suffer harm because he is handicapped and may not be able to comply with HPD's rules and regulation regarding recertification. However, all of Plaintiff's claims are conjectural or hypothetical.

**PLAINTIFF'S STATE CLAIMS**

Initially, as Plaintiff's federal claims fail the Court should not exercise supplemental jurisdiction as to Plaintiff's state claims. Title 28 U.S.C. § 1367 governs the District Court's power to decide state law claims, and subsection (c) permits the Court to decline to exercise supplemental jurisdiction.

In determining whether to exercise supplemental jurisdiction over state law claims, "district courts should balance the values of judicial economy, convenience, fairness, and comity." Klein & Co. Futures Inc. v. Bd. of Trade of New York City, 464 F.3d 255, 262 (2d Cir. 2006) (citation omitted). In weighing these factors, district courts consider "(1) the length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as opposed to local concern." Birch v. Pioneer Credit Recovery, Inc., 2007 U.S. Dist. LEXIS 41834, *16 (W.D.N.Y. Jun. 8, 2007).

Here, because the Court should dismiss Plaintiff's federal claims, the exercise of supplemental jurisdiction over the state law claims is inappropriate. See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("Federal courts normally decline to exercise supplemental jurisdiction over state law claims when all the federal claims have been dismissed before trial."). Plaintiff state law claims do not implicate any federal question or any issue of federal policy or interest. Moreover, Plaintiff recently filed amended the First Amended Complaint, this action is in its initial stages, and no trial date has been set.

However, if the Court is willing to exercise supplemental jurisdiction then Plaintiff's state claims fail and should be dismissed as well.

10

I. **Plaintiff's New York State Human Rights Law Claim Fails**

A claim of disability discrimination under the New York State Human Rights Law ("NYSHRL") is governed by the same legal standards as federal ADA claims. Morse v. JetBlue Airways Corp., 941 F. Supp. 2d 274, 292 (E.D.N.Y. 2013); see also Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir. 2000). "Thus, to the extent that [a plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as plaintiff's ADA claim." Morse, 941 F. Supp. 2d at 292; see also Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n.3 (2d Cir. 2006). Therefore, for the reasons stated above, Plaintiff's claims on the basis of discrimination based on his association with Ms. Pinckney and his own disability under the NYSHRL fails as they did under the ADA, and should be dismissed.

II. **Plaintiff's New York City Human Rights Law Claim Fails**

Under the New York City Human Rights Law ("NYCHRL") a public accommodation is required to make a reasonable accommodation to an individual with a disability, where the entity knows or should have known of the disability. However, the SAC fails to state a claim under the NYCHRL as it does not allege that Ms. Pinckney ever requested a reasonable accommodation through HPD's established procedures. Further, the SAC does not allege that Ms. Pinckney explained the extent of her disability to HPD in her written request for an informal hearing.

Moreover, the SAC fails to state a claim under the NYCHRL as it does not allege that Plaintiff suffered discrimination by HPD. Plaintiff alleges that he may in the future suffer harm because he is disabled and may not be able to comply with HPD's rules and regulation regarding recertification. However, all of Plaintiff's claims are conjectural or hypothetical. As

the SAC fails to state sufficient factual allegations under the NYCHRL, this claim should be dismissed.

### III. **Plaintiff is Not Entitled to Damages Based on Emotional Distress**

Notwithstanding that Plaintiff does not articulate a cause of action for emotional distress, Plaintiff does seek damages for emotional distress. In any event, Plaintiff did not identify under which theory of emotional distress he is seeking to recover damages. However, if Plaintiff is seeking damages under intentional infliction of emotional distress his claim fails as a matter of law. Under New York law it is "well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity." Batista v. City of New York, 2007 U.S. Dist. LEXIS 71905, 26 (S.D.N.Y. 2007); see also Rivera v. City of New York, 392 F. Supp. 2d 644 (S.D.N.Y. 2005); D'Angelo-Fenton v. Town of Carmel Police Dep't., 470 F. Supp. 2d 387 (S.D.N.Y. 2007); Saldana v. Port Chester, 2010 U.S. Dist., LEXIS 142099 (S.D.N.Y. 2010); Noonan v. City of New York, 2015 U.S. Dist. LEXIS 83451 (S.D.N.Y. 2015). As Plaintiff has named HPD, a City agency, Louise Carroll in her official capacity as Commissioner of HPD, and the City of New York, he cannot recover damages for intentional infliction of emotional distress.

Moreover, to state a claim of intentional infliction of emotion distress or negligent infliction of emotional distress Plaintiff must establish "(i) extreme and outrageous conduct, (ii) with the intent to cause emotional distress, (iii) a causal connection between the conduct and alleged injury, and (iv) that he has suffered severe emotional distress." See Rivera, 392 F. Supp. 2d at 657-58. "For conduct to be sufficiently 'extreme and outrageous' to give rise to a claim for intentional infliction of emotional distress, it must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and

utterly intolerable in a civilized society." See Rivera, 392 F. Supp. 2d at 658, citing Murphy v. American Home Products Corp., 58 N.Y. 2d 293, 303 (1983). "Of the intentional infliction of emotional distress claims in cases considered by the New York Court of Appeals, every one has failed because the alleged conduct was not sufficiently outrageous." Corley v. Spitzer, 2015 U.S. Dist. LEXIS 2022, 22 (S.D.N.Y. 2015). Here, Plaintiff has failed to allege that Defendants committed extreme or outrageous conduct that transcends the bounds of decency. Defendants' action of terminating Ms. Pinckney's Section 8 for failure to timely submit documents or the denial of her request for a new hearing cannot be considered extreme or outrageous conduct toward Plaintiff much less rise to the level that would satisfy the high bar set by New York courts.

Intentional infliction of emotional distress "claims that overcome a Rule 12(b)(6) motion typically plead some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." Mutlu v. JetBlue Airways Corp., 2009 U.S. Dist. LEXIS 60164 (S.D.N.Y. 2009). "Although physical injury is no longer a necessary component of a cause of action to recover damages for negligent infliction of emotional distress…the circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery much generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff or caused the plaintiff fear for his or her own physical safety." D'Angelo-Fenton, 470 F. Supp. 2d at 400. Here, Plaintiff has failed to allege that Defendants engaged in public humiliation, false accusations, verbal abuse or harassment, or physical threats against him or any other conduct towards him that would be contrary to public policy. Further, Plaintiff fails to allege that Defendants owed a

13

duty to Plaintiff, breached said duty, and endangered him or caused him to fear for his own physical safety.

As the SAC fails to state sufficient factual allegations under either theory of emotional distress, Plaintiff is not entitled to damages.

## CONCLUSION

For the reasons set forth above, Defendants request that the Court grant its motion to dismiss and dismiss this action in its entirety.

Dated: New York, New York
July 18, 2019

    ZACHARY W. CARTER
    Corporation Counsel of the City of New York
    Attorney for Defendants
    100 Church Street
    New York, New York 10007
    (212) 356-2192

    _____
    JASMINE PAUL
    Assistant Corporation Counsel