| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 12/04/2019 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
PARISGISELLE PINCKNEY,

                                        Plaintiff,

                    -against-                               18-CV-12198 (VEC)

                                                  OPINION AND ORDER

LOUISE CARROLL, as Commissioner of the New
York City Department of Housing Preservation and
Development,
THE NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND
DEVELOPMENT, and THE CITY OF NEW
YORK,

                                    Defendants.
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiff Parisgiselle Pinckney[1] sued the New York City Department of Housing Preservation and Development ("HPD"), Louise Carroll, as Commissioner of HPD, and the City of New York for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131(2), 12132, 28 C.F.R. § 35.130(b)(7); the Rehabilitation Act ("RA"), 29 U.S.C. § 794 *et seq*; Title VIII of the Civil Rights Act of 1968 (Fair Housing Act), as amended by the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. § 3601 *et seq*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(2)(a), (c) *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-106(4)(1)(a), 106(15)(a) *et seq*. *See* Second Am. Comp. ("SAC"), Dkt. 33 ¶¶ 115-84. Plaintiff seeks declaratory relief, injunctive relief, and monetary damages. *Id.* ¶ 185. Defendants move to dismiss the complaint

---

[1]     After commencing this action, Plaintiff legally changed her name from Justin to Parisgiselle. *See* Dkt. 40. Accordingly, the Court will use female pronouns throughout the opinion and has amended the caption to reflect Plaintiff's legal name.

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 34. Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[2]

This action stems from the termination of Plaintiff's family's Section 8 housing assistance benefits. Section 8 of the United States Housing Act of 1937 provides federal funding to the owners of leased housing "for the purpose of aiding low-income families in obtaining a decent place to live." Pl. Mem. of Law, Dkt. 38 at 6; 42 U.S.C. § 1437f(a). Defendant HPD administers a Section 8 voucher program through which low-income families in New York City receive subsidies that can be used to rent qualifying housing. Pl. Mem. of Law at 6. HPD has a written policy stating that reasonable accommodations to participants with disabilities will be made if the disabled individual completes a "Reasonable Accommodation Request form or submit[s] a letter from a medical professional [verifying] the person's disability and need for the reasonable accommodation." *Id.*

Plaintiff's now-deceased mother, Laurette Pinckney ("Ms. Pinckney"), began participating in the Section 8 voucher program in 2008. SAC ¶ 4. Thereafter, Plaintiff, along with her mother and brother, were able to move to 1211 Southern Boulevard in the Bronx. SAC ¶¶ 1, 4. In September 2016, Ms. Pinckney suffered a stroke and became wheelchair-bound, allegedly resulting in her being unable to comply in a timely way with the annual documentation and recertification requirements to maintain her Section 8 subsidy. SAC ¶¶ 69-70. As a result, on January 17, 2017, HPD issued a "Notice of Section 8 Rent Subsidy Termination," informing Ms. Pinckney that her voucher would be terminated at the end of February and indicating that

---

[2] The facts are taken from the Plaintiff's Second Amended Complaint and are assumed to be true for purposes of this motion.

any request for a hearing to contest the termination must be received by February 16, 2017. *Id.* ¶¶ 76-77.

On February 2, 2017, Ms. Pinckney was hospitalized after her family found her unresponsive; she remained in the hospital until February 17, 2017. *Id.* ¶ 78. Allegedly as a result of her hospitalization, Ms. Pinckney failed to request a hearing to contest the termination of her voucher before the February 16 deadline. Four days after being released from the hospital, on February 21, Ms. Pinckney visited HPD's office with her home health aide and explained that she had been unable to comply with the recertification deadline or request a hearing because she had suffered a stroke and was in the hospital. *Id.* ¶ 81. Specifically, Ms. Pinckney requested permission to submit belatedly the documents required to reinstate her Section 8 voucher. *Id.* ¶ 82. Plaintiff asserts that HPD accepted the documents and instructed Ms. Pinckney to submit a written request for a hearing. *Id.* ¶ 83. Despite her oral request for an accommodation, as well as her subsequent written request for a hearing, HPD informed Ms. Pinckney that her recertification documents would not be accepted and denied her request for a hearing as untimely. *Id.* ¶ 84. Ms. Pinckney continued to speak to HPD personnel, in person and by phone, to request an accommodation that would enable her to reinstate her voucher. *Id.* ¶¶ 85-86. HPD allegedly refused Ms. Pinckney's requests and suggested she retain a lawyer. *Id.*

In September 2017, Ms. Pinckney's landlord, 1211 Southern Boulevard, filed an eviction proceeding in Bronx Housing Court, alleging that Ms. Pinckney had violated her lease by failing to maintain her Section 8 subsidy. *Id.* ¶ 89. On May 23, 2018, HPD appeared in the eviction proceeding to confirm that it would not reinstate Ms. Pinckney's Section 8 voucher. *Id.* ¶ 92. Two weeks later, on June 13, 2018, Ms. Pinckney died at the age of 55. *Id.* ¶ 94. Following Ms. Pinckney's death, 1211 Southern Boulevard continued the eviction proceedings; on September 19, 2018, they notified Plaintiff that she had five days either to pay $21,818 or to vacate the

apartment. *Id.* ¶ 101. Plaintiff is 24 years old and suffers from depression and bipolar disorder. *Id.* ¶¶ 62-63. As a result of her mental illnesses and the stress of a looming eviction proceeding, Plaintiff was hospitalized in September 2018. *Id.* ¶ 102.

On December 26, 2018, Plaintiff commenced this action against HPD, the City of New York, and HPD Commissioner, Louise Carroll. Dkt. 1. In April 2019, HPD agreed to reinstate Plaintiff's Section 8 voucher and made payments retroactive to the voucher termination in 2017. SAC ¶ 106. Plaintiff filed a Second Amended Complaint on June 27, 2019. Dkt. 33. Plaintiff now seeks a declaratory judgment and damages for Defendants' failure to accommodate her mother's disability in violation of the ADA, RA, FHA, NYSHRL, and NYCHRL, as well as an injunction requiring HPD to adopt policies and institute training designed to ensure that HPD provides reasonable accommodations to individuals with disabilities. *Id.* ¶ 185. Defendants move to dismiss the second amended complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under rule 12(b)(6).

**DISCUSSION**

1. **Standing**

Defendants move to dismiss the complaint on the ground that Plaintiff lacks standing to seek declaratory, monetary, or injunctive relief. The Court will address separately Plaintiff's standing (*vel non*) for monetary and injunctive relief.[3] *See Friends of the Earth, Inc. v. Laidlaw*

---

[3] Plaintiff's opposition does not specifically address whether she has standing to seek declaratory relief, and instead focuses on her standing to seek monetary and injunctive relief. Thus, it is unclear whether Plaintiff is pursuing her request for a declaratory judgment. Regardless, Plaintiff lacks standing to seek declaratory relief. The purpose of declaratory relief is to address ongoing or prospective harm when the legal relations between parties are uncertain. *Parker v. Citizen's Bank, N.A.,* No. 19-CV-1454, 2019 WL 5569680, at *4 (S.D.N.Y. Oct. 29, 2019). Thus, to obtain declaratory relief, a plaintiff must show "how [she] will be injured *prospectively* and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (emphasis added). Here, however, Plaintiff's claim for declaratory relief is based on alleged past wrongs against her now-deceased mother. Plaintiff fails to show "a sufficient likelihood that she will again be wronged in a similar way," *Marcavage*, 689 F.3d at 103 (internal citation omitted), given that her mother is now deceased and the Section 8 benefits have been restored. Thus, Plaintiff's claim for declaratory relief is dismissed. *See Parker*, 2019 WL 5569680, at *4 (dismissing plaintiff's claim for declaratory relief because it was based on past harms only).

*Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("Plaintiff must demonstrate standing separately for each form of relief sought.").

### a. Legal Framework

Pursuant to Article III of the Constitution, federal courts may only hear "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992). To ensure the presence of a case or controversy, the Court must make a threshold determination of whether the plaintiff has standing to sue. *Id.* at 560-61. To have standing a plaintiff must allege: (1) a concrete, particularized, actual or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable to the challenged action of the defendant"; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court. *Id*. at 560 (internal quotation marks omitted). If a plaintiff lacks standing, the claim must be dismissed for lack of subject matter jurisdiction. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

### b. Plaintiff Has Standing to Seek Damages for Past Discrimination

The scope of standing under the ADA, RA, and FHA is construed as broadly as is constitutionally permitted. *See Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997) (*superseded on other grounds*, *Zervos v. Verizon N.Y., Inc*., 252 F.3d 163, 171 n.7 (2d Cir. 2001)); *Fulton v. Goord,* 591 F.3d 37, 42 (2d Cir. 2009) (holding that the ADA and RA are not subject to any of the prudential limitations on standing); *Fair Hous. in Huntington Comm. v. Town of Huntington*, *N.Y.*, 316 F.3d 357, 362 (2d Cir. 2003) (standing under the FHA is "coextensive with Article III standing"). Thus, "non-disabled parties bringing associational discrimination claims [under the ADA and RA] need only prove an independent injury causally related to the denial of federally required services to the disabled persons with whom the non-

disabled plaintiffs are associated." *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 279–80 (2d Cir. 2009) (Wesley, J., concurring) (holding that the children of deaf parents suffered independent injuries sufficient to confer standing because they were compelled to provide sign language interpretation and were exposed to their father's suffering); *see also McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142 (11th Cir. 2014) ("it is widely accepted that under both the RA and the ADA, non-disabled individuals have standing to bring claims when they are injured because of their association with a disabled person"); *Doe v. U.S. Sec'y of Transportation*, No. 17-CV-7868, 2018 WL 6411277, at *7 (S.D.N.Y. Dec. 4, 2018) (explaining that parents have standing to sue under the ADA and RA even when their disabled child was the person directly injured); *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 229-30 (E.D.N.Y. 2015).

Similarly, under the FHA, any "aggrieved person," which includes anyone who "claims to have been injured by a discriminatory housing practice," has standing to bring a discrimination claim. 42 U.S.C. §§ 3602(i), 3613(a)(1)(A). An "aggrieved person" need not be the direct target of discrimination in order to have standing under the FHA. *See Trafficante v. Metropolitan Life Ins. Co*, 409 U.S. 205, 205-209 (1972) (holding that white tenants had standing to challenge landlord's racially discriminatory practices under the FHA because the "definition of 'person aggrieved' in § 810(a) … showed a congressional intention to define standing as broadly as is permitted by Article III of the Constitution.") (Internal citation and quotation marks omitted).[4]

---

[4] Standing under the NYSHRL and NYCHRL is analyzed similarly; the NYSHRL is construed "to be coextensive with [its] federal counterparts." *Loeffler,* 582 F.3d at 277. The NYCHRL is construed even more "liberally than [the] federal and state counterparts," and "explicitly allows 'associational discrimination' claims." *Id.* at 277-78.

6

Here, Defendants argue Plaintiff lacks standing because she was not the direct victim of the alleged discrimination and therefore suffered no harm based on her association with Ms. Pinckney. Defs.' Mem. of Law, Dkt. 37 at 7-8. The Court disagrees; Plaintiff adequately alleges independent injuries resulting from HPD's alleged failure to accommodate her mother's disability. *See* SAC ¶¶ 127-28, 143-44. First, Plaintiff alleges she was harmed by Defendants' discrimination because, but for HPD's failure to accommodate Ms. Pinckney's disability, the Section 8 voucher would not have been terminated and Plaintiff would have succeeded to the subsidy when her mother died. SAC ¶ 127. Additionally, because Plaintiff lived with her mother at the time the subsidy was terminated, Plaintiff was wrongfully denied the benefit of having Section 8 assistance benefits for two years and experienced emotional distress and anxiety surrounding the threat of eviction. SAC ¶¶ 128, 143-44; *see Picaro v. Pelham 1135 LLC*, No. 14-CV-7398, 2015 WL 1854272, at *3 (S.D.N.Y. Apr. 21, 2015) (holding that plaintiff's significant anxiety as a result of defendants' alleged failure to accommodate the disabilities of his mother constituted part of the alleged injury he suffered). Thus, assuming all factual allegations are true and drawing all reasonable inferences in favor of the non-moving party, Plaintiff has plausibly alleged that she suffered independent injuries resulting from Defendants' failure to accommodate her mother's disability. *Loeffler,* 582 F.3d at 279–80 (Wesley, J., concurring); *see WC Capital Mgmt., LLC v. UBS Secs., LLC*, 711 F.3d 322, 329 (2d Cir. 2013) (explaining that the court must take as true the factual allegations contained in the complaint when assessing a lack of standing argument on the basis of the pleadings). Accordingly, Plaintiff has standing to seek monetary relief for past discrimination against her mother under the ADA, RA, FHA, NYSHRL, and NYCHRL.[5]

---

[5] Defendants do not discuss the causation and redressability prongs of the standing analysis in their memorandum in support of their motion to dismiss. Nonetheless, the Court finds that Plaintiff has adequately pled

### c. Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff also seeks an injunction requiring HPD to adopt policies and conduct training designed to ensure that HPD provides reasonable accommodation to disabled individuals in the future. SAC ¶ 185. Defendants argue that Plaintiff lacks standing because her alleged injury is hypothetical and speculative. Defs.' Mem. of Law at 7-8. The Court agrees and grants Defendants' motion to dismiss Plaintiff's claim for injunctive relief.

To establish standing for an injunction, a plaintiff must show that there is a risk of continuing or future harm; past exposure to illegal conduct is insufficient to satisfy the injury-in-fact requirement. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Moreover, the injury cannot be "conjectural or hypothetical," *id.* (internal quotation marks omitted); the plaintiff must be "immediately in danger of sustaining some direct injury" as a result of defendants' conduct, *Valley Forge Christian College v. American United for Separation of Church and State, Inc.*, 454 U.S. 464, 477 (1984) (internal citation omitted).

Here, Plaintiff's claim for injunctive relief stems from her belief that at some point in the future, as a result of her own disability, she may be refused an accommodation, fail to comply with the voucher recertification requirements, and have her housing benefits terminated. Pl. Mem. of Law at 16-17. As noted, *supra*, Plaintiff suffers from bipolar disorder and depression and "struggles with meeting deadlines and submitting paperwork." *Id.* HPD's internal policy requires individuals to submit requests for accommodations in writing and with accompanying medical documentation. *Id.* at 6. Plaintiff argues her disabilities place her at a "heightened risk of termination" from the Section 8 voucher program because she will likely not only fail to meet

---

that her injury is fairly traceable to Defendants' allegedly wrongful conduct because, had Defendants granted Ms. Pickney's request for an accommodation, the Section 8 voucher would not have been terminated and 1211 Southern Boulevard would not have initiated an eviction proceeding. SAC ¶¶ 127-28, 143-44. Plaintiff also adequately alleges that a ruling in her favor will redress her alleged injury by providing monetary compensation. *Id.* ¶¶ 142-43.

HPD's recertification deadlines but will also either fail to request an accommodation pursuant to HPD's policies or be wrongfully refused one. *Id.* at 17. As a result, Plaintiff argues, the termination of her Section 8 subsidy is sufficiently imminent and inevitable as to constitute an ongoing injury. *Id.*

The Court finds Plaintiff's alleged injury to be speculative and hypothetical. Although Plaintiff may be worried that she will miss HPD's recertification deadlines and may fear another eviction proceeding, at the present moment, there is no reason for the Court to assume that she will fail to request an accommodation if she needs one, or that HPD will wrongfully deny her a reasonable accommodation if she makes such a request, or that she will fail to comply with recertification requirements. In other words, Plaintiff has not shown that she is "immediately in danger of sustaining some direct injury" as a result of Defendants' conduct. *Valley Forge Christian College,* 454 U.S. at 477. Instead, Plaintiff's potential harm rests on a "speculative chain of possibilities," which is insufficient to confer standing. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013) (holding that "respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending.").

Plaintiff relies heavily on *Hargrave v. Vermont,* 340 F.3d 27 (2d Cir. 2003), and *Brooklyn Center for Independence of the Disabled v. Bloomberg,* 290 F.R.D. 409, 414 (S.D.N.Y. 2012), to support her argument for standing. There are, however, significant factual differences between those cases and Plaintiff's current circumstances. In *Hargrave*, a mentally ill and civilly-committed plaintiff, who had signed a durable power of attorney refusing certain forms of treatment, sued to enjoin enforcement of a statute that would allow the state to override her decision to refuse such treatment. 340 F.3d at 33. The Second Circuit explained that the plaintiff alleged a sufficient risk of future harm because she had already executed the power of

9

attorney and had reason to believe the statute would soon be enforced. *Id.* at 34. By contrast, Plaintiff has not yet missed any deadlines regarding her Section 8 subsidy, has not requested any accommodation pursuant to HPD's internal policies or otherwise, and has not been refused any accommodation. Thus, Plaintiff is not currently facing a "real and immediate" threat of injury. *Lyons*, 461 U.S. at 102.

In *Brooklyn Center for Independence of the Disabled*, Hurricane Sandy survivors sought injunctive relief to redress the inadequacies of the city's emergency preparedness procedures. 290 F.R.D. at 413. The court explained that plaintiffs adequately alleged an injury not only because the recurrence of another emergency is "beyond mere conjecture" but also because the deprivation of "the benefits of an adequate emergency preparedness program" is itself an ongoing injury. *Id.* at 414-15. Here, it is purely hypothetical whether plaintiff will ever miss a recertification deadline or be wrongfully denied a request for an accommodation. Moreover, Plaintiff is not currently being deprived of any benefit; her Section 8 voucher has been reinstated. There is no reason to believe HPD would wrongfully deny a reasonable accommodation if one were requested.[6] Thus, Plaintiff's allegation that, "without appropriate injunctive relief, HPD will be free to engage in future violations of the [ADA and] FHA by failing to provide reasonable accommodations to individuals with disabilities," is conjectural and conclusory. Pl. Mem. of Law at 19.

Because Plaintiff's risk of future harm is speculative and hypothetical, she lacks standing to seek injunctive relief. Accordingly, Defendants' motion to dismiss Plaintiff's claim for an injunction is granted.

---

[6] Defendants also note that there is no risk of future harm because HPD is now on notice that Plaintiff has a disability and may require a reasonable accommodation. Def. Reply Mem. of Law at 5.

## 2. <u>Failure to State a Claim</u>

Defendants separately move to dismiss Plaintiff's claim that they failed to reasonably accommodate her mother's disability under Rule 12(b)(6); Defendants assert that because Ms. Pinckney never requested an accommodation through HPD's internal procedures, Defendants did not know she requested an accommodation and, accordingly, did not wrongfully refuse to accommodate her.

### a. Applicable Law

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014). At the motion to dismiss stage, a "complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980) (discussing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)).

Disability discrimination under the ADA, RA, and FHA may be proven pursuant to one of three theories: (1) intentional discrimination; (2) disparate impact; and (3) failure to make a reasonable accommodation. *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *13 (S.D.N.Y. Mar. 26, 2019); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003). Plaintiff invokes the third theory, which makes it unlawful for defendants to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled]

11

person equal opportunity to use and enjoy a dwelling." *Town & Country Adult Living, Inc.,* 2019 WL 1368560, at *16 (internal citation omitted); *see also Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir. 2008); *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). A reasonable accommodation "gives the otherwise qualified plaintiff with disabilities meaningful access to the program or services sought." *Henrietta D.,* 331 F.3d at 282 (internal citation omitted). Due to the similarities between the statutes, courts apply a similar analysis to reasonable accommodation claims under the ADA, RA, FHA, NYSHRL, and NYCHRL. *See Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 n.4 (2d Cir. 2003) (analyzing claims under the ADA and FHA "in tandem"); *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014); *Loeffler,* 582 F. 3d at 277-78. Accordingly, the Court conducts a single analysis of Plaintiff's reasonable accommodation claim.

To state a *prima facie* claim for failure to accommodate a disability, Plaintiff must allege that: (1) her mother suffered from a disability or handicap; (2) the defendant knew or reasonably should have known of Plaintiff's mother's disability; (3) an accommodation of the disability may be necessary to afford her mother an equal opportunity to use and enjoy a dwelling; and (4) defendants refused to make an accommodation.[7] *Logan*, 57 F. Supp. 3d at 256; *see also McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013). Defendants "must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden." *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012) (internal quotation marks omitted).

---

[7]      Although it is typically the plaintiff's burden to plead and prove these elements as they relate to herself, because Plaintiff is suing based on alleged discrimination against her mother, Plaintiff must adequately plead and prove these elements as to Ms. Pinckney.

### b. Plaintiff States a Claim for Failure to Make a Reasonable Accommodation

Defendants argue that Plaintiff fails to adequately allege that Defendants knew Ms. Pinckney had a disability and that Defendants wrongfully refused her a reasonable accommodation.[8] Def. Mem. of Law at 8. The Court disagrees.

Plaintiff plausibly alleges that Defendants knew or should have known that Ms. Pinckney was disabled and was requesting an accommodation in her interactions with HPD. First, Plaintiff alleges that Ms. Pinckney was in a wheelchair and accompanied by a home health aide during her February 2017 visit to the HPD office. SAC ¶¶ 81-82. Plaintiff further alleges that Ms. Pinckney informed HPD personnel that her recent stroke and hospitalization had prevented her from complying with HPD's recertification deadline and expressly requested permission to submit the required documentation "now that she was no longer in the hospital." *Id.* ¶ 82. Moreover, Plaintiff claims that HPD "accepted the documentation Ms. Pinckney [] brought to HPD's office and instructed [her] to submit a written request for a hearing;" Plaintiff asserts that any reasonable person would have understood that her mother's request was for an accommodation because of her disability. *Id.* ¶¶ 82-83. Lastly, after HPD rejected her documents and request for a hearing as untimely, Plaintiff alleges that Ms. Pinckney continued to speak to HPD personnel, in person and by phone, "to ask how she could restore her Section 8 rent subsidy." *Id.* ¶¶ 85-86. Drawing all inferences in favor of the non-moving party, Plaintiff has plausibly alleged that Defendants were aware of Ms. Pinckney's disability and were aware that she was requesting an accommodation because of her disability.[9] *See Henrietta D.*, 331

---

[8] Defendants do not contest that Plaintiff's mother suffered from a disability and that an accommodation was necessary for her to gain access to HPD's voucher program (elements one and three of the *prima facie* case). Pl. Mem. of Law at 22; Def. Mem. of Law at 8-9.

[9] Determining whether Plaintiff is correct that reasonable persons in HPD's position would have understood Ms. Pinckney's requests to be requests for an accommodation because of her disability, as opposed to merely being requests to file her documents late, as well as determining who exactly within HPD knew about Ms. Pinckney's

F.3d at 277 ("Quite simply, the demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation."); *Sinisgallo v. Town of Islip Hous. Auth.,* 865 F. Supp. 2d 307, 339 (E.D.N.Y. 2012).

Plaintiff also adequately alleges that Defendants refused to provide a reasonable accommodation. As noted, *supra*, Plaintiff claims that Defendants understood that Ms. Pinckney was disabled and required an accommodation in order to meet HPD's internal deadlines and policies. Nevertheless, after accepting Ms. Pinckney's documents for recertification and instructing her to submit a request for a hearing to contest the termination, Defendants still refused to reinstate Ms. Pinckney's voucher and rejected her request for a hearing as untimely. SAC ¶¶ 83-84. Plaintiff also claims HPD refused Ms. Pinckney's multiple in-person and telephone requests for the voucher to be reinstated and instead instructed her to retain a lawyer. SAC ¶¶ 81-87. Moreover, Plaintiff alleges that an accommodation in the form of either a slight extension of the recertification deadline or of the deadline to request an informal hearing to contest the voucher termination would have been reasonable; it would not have "pose[d] an undue hardship or a substantial burden." *Taylor*, 690 F.3d at 49. SAC ¶¶ 124, 140. Drawing all inferences in favor of the non-moving party, Plaintiff has plausibly alleged that Defendants refused to provide a reasonable accommodation.

Defendants rely on *Tsombanidis,* 352 F.3d at 578, to argue that, because Ms. Pinckney did not submit a written request for an accommodation pursuant to HPD's internal policies, Ms. Pinckney failed to request an accommodation, and, therefore, Defendants cannot be said to have

---

alleged requests for an accommodation are inquiries better suited for summary judgment. Plaintiff has sufficiently alleged, although just barely, that Defendants knew or reasonably should have known that Ms. Pinckney was disabled and was requesting an accommodation because of her disability. *See Keiler*, 751 F.3d at 70 (a complaint "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

refused any such request. Def. Mem. of Law at 8-9. Defendants seek to extend *Tsombanidis* beyond what is reasonable. In *Tsombanidis*, the Second Circuit affirmed the district court's dismissal of the plaintiff's reasonable accommodation claim on the grounds that the plaintiff failed to "first provide the governmental entity an opportunity to accommodate them through the entity's established procedures." 352 F.3d at 578. In that case, the plaintiffs had specifically stated in their communication with defendant that they were "*not* seeking an accommodation"; in affirming the dismissal, the Second Circuit reasoned that a "governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation." *Id.* at 579 (emphasis added). Here, however, as noted *supra*, Plaintiff alleges that Ms. Pinckney explained her disability and resulting need for an accommodation directly to Defendants multiple times so that HPD knew Plaintiff was seeking an accommodation and had ample opportunity to provide one. SAC ¶¶ 82-86. At least for purposes of deciding the motion to dismiss, Ms. Pinckney's failure to submit a request for accommodation in writing does not negate HPD's alleged knowledge or understanding that Plaintiff sought a reasonable accommodation because of her disability.[10]

Because Plaintiff has adequately alleged a claim for failure to make a reasonable accommodation, Defendants' motion to dismiss Plaintiff's claim under Rule 12(b)(6) is denied.

---

[10] Defendants argue that Plaintiff may have been able to assert a claim for failure to make a reasonable accommodation "had Ms. Pinckney used the established procedure at HPD and requested a reasonable accommodation in writing that was denied." Def. Mem. of Law at 8. This argument proves too much; while HPD is entitled to have internal procedures governing requests for accommodations (compliance with which demonstrates beyond argument that a request was made), a plaintiff's failure to comply with such internal policies does not necessarily shield Defendants from their obligation under federal law to make reasonable accommodations in response to less formal requests from disabled individuals.

## CONCLUSION

For the foregoing reasons, the Court finds that although Plaintiff lacks standing to seek injunctive or declaratory relief, she has alleged independent injuries sufficient to confer standing to seek monetary relief. Moreover, Plaintiff has plausibly alleged a claim against Defendants for failure to reasonably accommodate her mother's disability. Accordingly, Defendants' motion to dismiss Plaintiff's claim for injunctive and declaratory relief is GRANTED. Defendants' motion to dismiss Plaintiff's claim for damages is DENIED. The Clerk of Court is respectfully directed to close the motion at docket entry 34 and to amend the caption as reflected in this order.

Discovery in this case was stayed pending the resolution of Defendants' motion to dismiss. Dkt. 24. The parties are now required to meet and confer on a revised case management plan. A pretrial conference will be held on **January 17, 2020 at 10:00 a.m.** In accordance with the Court's individual rules, the parties must submit a joint letter and revised case management plan by **January 9, 2020.**

**SO ORDERED.**

Date: **December 4, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**